**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | | |
|---|---|---|
| In the Matter of the Estate of | ) | No. 81376-5-I |
| | ) | |
| ALLAN B. PRATT, | ) | |
| | ) | |
| Deceased. | ) | |
| | ) | |
| JOSEPH JACOBS, personal representative, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| BEVERLY SANDERS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent. | ) | |
| | ) | |

MANN, C.J. — Joseph Jacobs, the personal representative of the estate of Allan

Pratt, appeals the trial court's order correcting several scrivener's errors pursuant to CR

60(a). Jacobs contends that the trial court abused its discretion because the error was

judicial in nature and could not be corrected pursuant to CR 60(a). We affirm.

I.

Pratt executed his last will and testament on February 26, 2014. The will

identified Beverly Sanders, Pratt's then-fiancé, and his three sisters, Narelle Bukala,

Linda Pratt, and Cheryl Hayden as his beneficiaries and indicated the estate should be

Citations and pin cites are based on the Westlaw online version of the cited material.

split evenly among the beneficiaries. The will appointed Joe Jacobs as the personal representative of the estate and was duly witnessed by two disinterested individuals.

A subsequent document was drafted on July 18, 2017 stating that "Allan Pratt changed [his] will[,] [t]he monies from Vanguard & Sale of Condo go to the BEE & 110 Sick/Needy and to the people listed below" and listed 13 new individuals and Doctors Without Borders, as purported beneficiaries, allocating various amounts of money to those individuals. The document also stated:

> Bank accounts and all other monies to Joe Jacobs[.] Chrysler Car to Joe & Carole Jacob's for Angela's 16th Birthday (if it works out)[.] The Bus (motorhome) to Joe & Carole Jacobs. Will need to pay it off. Use money from Vanguard to pay balance of loan. Beverley Sanders $10,000 from bank accounts. Need to try and get money out of bank in Australia. Note will have to find ex-wife for that to happen. It is up to Joe Jacobs to take care of all of this. Joe can use his discretion to make this happen.

The document was typed with handwritten notes but was not signed by Pratt or witnessed.

Pratt died on December 12, 2017. Jacobs submitted Pratt's last will and testament and the document to probate on February 12, 2018. On February 14, 2018, the court admitted the will to probate and entered the following conclusion of law: "the Last Will and Testament of Allan B. Pratt dated the 12th day of December, 2017, offered herein for probate shall be and hereby is established as the Last Will and Testament, and shall be and hereby is admitted to probate." The court confirmed and appointed Jacobs as personal representative of the estate. On February 16, 2018, Jacobs filed an "affidavit of mailing of notice of appointment and pendency of probate" to all the original devisees and the devisees under the document.

In addition, Jacobs mailed the original devisees, requests to disclaim their interests under the will, explaining there was a second will, which modified the first. Jacobs acted as if the document was admitted to probate as a codicil that modified Pratt's last will and testament. The letter to Sanders stated:

> It is my understanding that you have spoken to Joseph Jacobs regarding this estate. He has indicated that you have elected to renounce and disclaim your one-quarter interest in and to the estate of Allan B. Pratt as set forth in his Last Will and Testament dated February 26, 2014. However, you do not renounce or disclaim your share as stated in his amendment to his Will. Therefore, I have enclosed a Disclaimer/Renunciation of Interest for your review and signature. If you are in agreement with its contents, please sign and return to me in the envelope provided.

On February 26, 2018, Sanders signed the disclaimer and renunciation of interest. Sanders was not represented by an attorney when she signed the waiver.

On May 4, 2018, Jacobs filed a petition to initiate a Trust and Estate Dispute Resolution Act (TEDRA) action. The action was initiated because Bukala "called into question the legitimacy of the codicil on file" and indicated that Jacobs "determined it [was] in the best interest of the Estate, the Estate's creditors, and the Estate's beneficiaries to bring this matter before the Court in order to give all interested parties an equal opportunity to be heard."

On May 22, 2018, Bukala filed a petition to contest the purported codicil. On July 6, 2018, Bukala filed a response to the TEDRA action, stating that the purported codicil cannot be probated because "it was not signed by the deceased, was not witnessed, and did not refer to the Last Will and Testament." On August 30, 2018, Sanders filed a declaration in support of Bukala's contest of the purported codicil. Bukala failed to

personally serve Jacobs with the documents during the 90-day period and did not file or serve a TEDRA summons.

On August 24, 2018, Jacobs filed a motion to voluntarily dismiss the TEDRA action pursuant to CR 41, indicating that it was no longer beneficial to the estate for it to pursue the petition and that no counterclaim or counter-petition had been filed or served. On September 7, 2018, a hearing was held on Jacobs's motion for voluntary dismissal, none of the beneficiaries appeared, and the court dismissed the TEDRA action.

On December 4, 2018, Sanders filed a CR 60(a) motion for clarification, requesting

> entry of an Order specifying whether the purported codicil is admitted to probate in this matter. This request is being made because [Jacobs] appears to be proceeding as though the purported codicil controls the distribution of assets even though no reference was made to the purported codicil in the Petition, the Order or the Certificate of Testimony. Whether the Last Will and Testament or the purported codicil controls is critically important, given the significant difference in distributions that each document makes.

Jacobs filed a response to the motion, arguing Sanders was using CR 60(a) to improperly and untimely contest the will and that the codicil was clearly admitted to probate in the original order. Further, Jacobs argued, Sanders had already disclaimed her interest in the will and recognized that the purported codicil had been admitted to probate.

A hearing was scheduled on January 25, 2019. At the time of this hearing, the Lewis County Local Civil Rule (LCR) 3(A)(5) required that "All motions shall be confirmed for argument through the Clerk's Office by 12:00 noon two court days prior to

the scheduled argument. Confirmations shall be made by calling the County Clerk at (360) 740-2704. Motions not confirmed will be stricken unless the parties and the Court agree otherwise." Jacobs's attorney, James Buzzard, noted that the hearing was not confirmed as of 4:50 p.m. on January 24, 2019 and decided not to appear, believing that the hearing would be struck.

The hearing was held without Jacobs or Buzzard present. After waiting 30 minutes for Jacobs or his attorney to arrive, the court administrator called Buzzard and told him that the hearing was scheduled and requested his appearance within 15 minutes. When Buzzard did not appear, the trial court waived the requirements of LCR 3(A)(5) and proceeded with the hearing. The court concluded that the order admitting the will to probate had several scrivener's errors and ordered a correction. Specifically, the order incorrectly stated the date of the last will and testament, the "last will and testament of Allen Pratt dated the 12th day of December, 2017," because December 12, 2017 was neither the date of the will, nor the alleged codicil, it was the date of Pratt's death. The court ordered that it "be corrected to recite that the will dated February 26th, 2014, is admitted to probate." Further, the order admitting the will to probate did not reference the purported codicil dated July 18th, 2017. The court ordered clarifying language to state that "[t]he document dated July 18th, 2017, is not a codicil and is not admitted to probate."

Jacobs filed a written objection to the January 25th hearing. Jacobs argued that the trial court violated LCR 3(A)(5) because the rule states that unconfirmed hearings "will" be stricken and is thus mandatory. Further, Jacobs argued that he did not agree to the hearing as required by LCR 3(A)(5). Jacobs made these arguments at the

presentation hearing on February 1, 2018. The trial court rejected Jacobs's arguments and entered the order. Jacobs appeals.

II.

Jacobs contends the record demonstrates that the court's original intent was to admit the codicil to probate because the record reflects that all the documents submitted to the court were admitted to probate. We disagree.

CR 60(a) provides, "Clerical mistakes in judgments, orders or other parts of the record and error therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders." "In deciding whether an error is 'judicial' or 'clerical,' a reviewing court must ask itself whether the judgment, as amended, embodies the trial court's intention, as expressed in the record at trial." Presidential Estates Apartment Assoc. v. Barrett, 129 Wn.2d 320, 326, 917 P.2d 100 (1996).

> If the answer to that question is yes, it logically follows that the error is clerical in that the amended judgment merely corrects language that did not correctly convey the intention of the court, or supplies language that was inadvertently omitted from the original judgment. If the answer to that question is no, however, the error is not clerical, and therefore, must be judicial. Thus, even though a trial court has the power to enter a judgment that differs from its oral ruling, once it enters a written judgment, it cannot, under CR 60(a), go back, rethink the case, and enter an amended judgment that does not find support in the trial court record.

Barrett, 129 Wn.2d at 326.

We review issues of statutory interpretation de novo. State v. Dennis, 191 Wn.2d 169, 172, 421 P.3d 944 (2018). We ascertain the meaning of a statute from its plain language. State v. Armendariz, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). If the plain language is clear, then our inquiry ends. Armendariz, 160 Wn.2d at 110. Only if the

language is ambiguous do we look to the legislative history to discern the legislative intent. Armendariz, 160 Wn.2d at 110-11.

Jacobs contends, without citing to any authority, that RCW 11.20.020[1] requires the court to specify if it is rejecting any portion of the documents offered to probate. In turn, Jacobs contends that the order did not specifically reject the codicil, thus it was admitted to probate.

Jacobs's argument fails. While the statute states "the court may immediately hear the proofs and either probate or reject such will as the testimony may justify," a rejection of certain documents is implicit when the order does not mention the document as admitted to probate. RCW 11.20.020 (emphasis added). Jacobs argues here that the plain language of RCW 11.20.020 requires the trial court to explicitly probate or reject each document before it, but the record before us does neither. Instead, the purported codicil was not mentioned in the order. Jacobs's position does not address the deficiency in the order and instead asks this to court to find the purported codicil was implicitly admitted because it was not referenced in the order. We decline this invitation.

The purported codicil is legally deficient. A codicil "means a will that modifies or partially revokes an existing earlier will. A codicil need not refer to or be attached to the earlier will." RCW 11.02.005(2). A will "means an instrument validly executed as required by RCW 11.12.020." RCW 11.02.005(20). In turn, RCW 11.12.020 requires that

---

[1] RCW 11.20.020 states: "applications for the probate of a will and for letters testamentary, or either, may be made to the judge of the court having jurisdiction and the court may immediately hear the proofs and either probate or reject such will as the testimony may justify."

> [e]very will shall be in writing signed by the testator or by some other person under the testator's direction in the testator's presence, and shall be attested by two or more competent witnesses, by subscribing their names to the will, or by signing an affidavit that complies with RCW 11.20.020(2), while in the presence of the testator at the testator's direction or request.

Viewing the record before us, the codicil does not meet the requirements of RCW 11.20.020. The attachments to the petition include "The Last Will and Testament of Allan B. Pratt And Codicil" and another untitled document, which is the purported codicil. While the petition to admit the will to probate attached the purported codicil, the petition does not reference it, or a document dated July 18, 2017.

The order admitting the will to probate mentions only "The Last Will and Testament of Allan B. Pratt." The purported codicil is not mentioned in the order and it is clearly a separate document from the will because it has a different date from the will. The record does not support the conclusion that the trial court intended to admit the purported codicil to probate.

Jacobs contends that since the order references the list of beneficiaries mentioned in both the will and the codicil that the trial court must have intended to admit the purported codicil. This argument fails. The list of beneficiaries is mentioned under the section "Heirs" and states "Allan B. Pratt left surviving him the following heirs, legatees, and devisees." Heirs, however, "denotes those persons, including the surviving spouse or surviving domestic partner, who are entitled under the statutes of intestate succession to the real and personal property of a decedent on the decedent's death intestate." RCW 11.02.005(6). Thus, a person may be an heir but not a beneficiary of a will. The list is insufficient to demonstrate that the trial court clearly

intended to admit the purported codicil to probate when the record as a whole demonstrates that the purported codicil failed to meet the requirements of RCW 11.20.020 and the order only referenced the last will and testament.

Since the scrivener's errors were clear from the record, we conclude that the trial court did not abuse its discretion when it clarified that the purported codicil was not admitted to probate.[2]

III.

Jacobs contends that Sanders disclaimed her interest in the will and acknowledged the existence of the purported codicil, barring her CR 60(a) motion. We disagree.

"Three requirements compose a claim fit for judicial determination: if the issues raised are primarily legal, do not require further factual development, and the challenged action is final." First United Methodist Church of Seattle v. Hr'g Exam'r for Seattle Landmarks Preserv. Bd., 129 Wn.2d 238, 255-56, 916 P.2d 374 (1996). We decline to address Pratt's disclaimer argument because it is not ripe for review. The trial court did not make any determination about the enforceability of the disclaimer and thus the record requires further factual development.

IV.

Jacobs contends that the trial court erred in holding a hearing and deciding Sanders's motion without Jacobs present when Sanders failed to confirm the hearing as required by LCR 3(A)(5). We disagree.

---

[2] We decline to address Jacobs's argument that this court should conclude that Sander's CR 60(a) motion was actually a will contest and barred by the four-month statute of limitations because we conclude that the trial court did not abuse its discretion in its clarification order.

"[T]he superior court has inherent power to waive its own rules" and we presume the superior court had sufficient cause to waive a local rule, absent evidence of an injustice. Foster v. Carter, 49 Wn. App. 340, 343, 742 P.2d 1257 (1987). At the time of the hearing, LCR 3(A)(5) stated "All motions shall be confirmed for argument through the Clerk's Office by 12:00 noon two court days prior to the scheduled argument. Confirmations shall be made by calling the County Clerk at (360) 740-2704. Motions not confirmed will [be] stricken unless the parties and the Court agree otherwise."[3]

Jacobs acknowledges that the trial court has inherent power to waive its own rules, but contends that here, the waiver deprived "Jacobs of the opportunity to appear and respond to the motion." The record does not support this contention.

The hearing was at 9:30 a.m. and at 10:00 a.m. the court administrator called Buzzard to notify him that he was late for the hearing and gave him 15 minutes to arrive. The court waited until 10:30 a.m. before proceeding. On the record, the court indicated that Buzzard "took the position with court administration that since this argument had not been confirmed by the moving party that under local rule the case was dismissed or that the hearing was stricken." The court indicated that

> rule has never been allowed to be used offensively like that. That confirmation rule is for the court may strike it. But we normally hear all cases whether they're confirmed or not. It's more of a convenience for the court than anyone else. Mr. Buzzard knows that. He's raised that issue before. He's never been allowed to strike a [case], an argument.

Further, the court reviewed Jacobs's response to Sanders's CR 60 motion. Critically, Jacobs fails to identify any evidence of an injustice because Jacobs has not explained

---

[3] LCR 3(A)(5) has since been amended to state: "Motions not confirmed will not be stricken without consensus of both parties and the court."

how his in-person argument would have differed from his written response to Sanders's CR 60(a) motion.

Jacobs's has failed to identify evidence of an injustice to the court hearing the motion without his presence, thus the trial court was within its discretion to waive the local rule.

V.

A party requesting attorney fees on appeal is entitled to fees if "applicable law grants to a party the right to recover reasonable attorney fees." RAP 18.1. RCW 11.96A.150 provides:

> (1) Either the superior court or any court on appeal may, in its discretion, order costs, including reasonable attorneys' fees, to be awarded to any party: (a) From any party to the proceeding; (b) from the assets of the estate or trust involved in the proceedings; or (c) from any nonprobate asset that is the subject of the proceedings.

Jacobs requests an award of attorney fees for having to oppose Sanders's motion in the trial court and attorney fees on appeal. Since we find in favor of Sanders, we deny Jacobs's request for attorney fees. Sanders requests an award of attorney fees on appeal. As the prevailing party, we grant her reasonable attorney fees from the assets of the estate.

Affirmed.

_____
Mann, C.J.

WE CONCUR:

_____          _____

-11-